# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BEHAVIORAL HEALTH INDUSTRY NEWS, INC., D/B/A/ OPEN MINDS,** : <br> : <br> **Plaintiff** : <br> : <br> v. : <br> : <br> **MENTAL HEALTH SYSTEMS, INC.,** : <br> : <br> **Defendant, and Counterclaim Plaintiff,** : <br> : <br> v. : <br> : <br> **BEHAVIORAL HEALTH INDUSTRY NEWS, INC., D/B/A OPEN MINDS, MONICA E. OSS, and JOE NAUGHTON-TRAVERS,** : <br> : <br> **Counterclaim and Third-Party Defendants** : | **CIVIL ACTION NO. 1:16-CV-1874** <br><br> **(Chief Judge Conner)** |

## **MEMORANDUM**

Plaintiff Open Minds commenced this breach of contract action against defendant Mental Health Systems, Inc. ("MHS") under Pennsylvania law. MHS asserts counterclaims against Open Minds as well as third-party defendants Monica Oss ("Oss") and Joe Naughton-Travers ("Naughton-Travers") (collectively, "the Open Minds defendants") under Pennsylvania and California law. The Open Minds defendants move for partial dismissal of MHS's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike paragraph 3 of MHS's counterclaims

in part pursuant to Federal Rule of Civil Procedure 12(f). The court will grant in part and deny in part the Open Minds defendants' motion.

I.     **Factual Background & Procedural History**

MHS is a nonprofit corporation located in San Diego, California, that provides mental health, drug, and alcohol rehabilitation services to California residents. (Doc. 42 ¶ 1). At all times relevant herein, non-parties Kimberly Bond ("Bond"), her husband David Conn ("Conn"), and Michael Hawkey ("Hawkey") worked at MHS. (See id. ¶ 7). Bond was MHS's chief executive officer and president, Conn was employed as senior vice president of government relations, and Hawkey was the company's chief financial officer. (Id.) Open Minds is a health care consulting business headquartered in Gettysburg, Pennsylvania, which is owned and run by Oss. (Id. ¶¶ 2-3). Naughton-Travers works at Open Minds as a senior associate. (Id. ¶ 4).

MHS retained Open Minds in December 2010 to "research, evaluate and assist in selecting a software vendor to provide electronic healthcare record ("EHR") services."[1] (Id. ¶ 8; see also Doc. 42-1). Under the terms of their contract (the "2010 Agreement"), Open Minds agreed, *inter alia*, to provide "objective assistance" to MHS throughout the vendor selection process. (Doc. 42-1 at 4; see also Doc. 42 ¶ 44). Open Minds ultimately identified two possible vendors, and MHS hired one of them. (See Doc. 42 ¶¶ 9-10). MHS contends that Open Minds had a

---

[1] We note that the 2010 Agreement refers to this as "electronic medical records" or "EMR," but we adopt the phrasing as articulated by the parties. (See, e.g., Doc. 42 ¶ 8; Doc. 46 at 4).

2

"pre-existing [business] relationship" with this vendor but failed to disclose the relationship to MHS during the selection process. (See id. ¶¶ 9, 35). MHS avers that it would not have selected this vendor, whose services "vastly exceed the needs of MHS's business model," but for the advice of Oss and Naughton-Travers. (See id. ¶¶ 10, 35, 44).

In early 2012, Oss and Naughton-Travers recommended that MHS form a for-profit subsidiary entitled Novata as a means to acquire the Center for Autism Research Evaluation and Services ("CARES"). (Id. ¶ 13). MHS retained Open Minds to provide "research and consulting services" regarding acquisition of CARES. (Id. ¶ 14; see also Doc. 42-2). MHS also contracted with Open Minds to provide an employee from Open Minds to serve as MHS's interim business development director to assist with the acquisition. (Doc. 42 ¶ 14; see also Doc 42-3). MHS officially acquired CARES in November 2013. (Doc. 42 ¶¶ 15-16). MHS alleges the acquisition put MHS in "serious financial jeopardy" and that Oss and Naughton-Travers realized this sometime before the spring of 2015. (See id. ¶¶ 18, 36). MHS contends that Oss and Naughton-Travers only discussed the true financial state of CARES with Bond and Conn, and presented "inaccurate financial statements" about CARES to the MHS board. (See id. ¶¶ 18-19, 36, 38).

In February 2016, Hawkey notified the MHS board and San Diego County that he was concerned about the relationship between Open Minds, Bond, and Conn, and that he suspected fraudulent billing by Open Minds. (Id. ¶ 22). The county performed an audit and concluded that Open Minds had billed MHS in the amount of $1.4 million for $145,000 in expenditures. (Id. ¶ 23). The MHS board, in a

3

separate investigation, discovered that the Open Minds defendants hired Conn in August 2014 as a paid consultant. (Id. ¶¶ 24, 34; see also Doc. 42-4). Under the terms of his employment contract, Conn received commission payments for securing new projects with clients, like MHS. (See Doc. 42-4 at 3-4; Doc. 42 ¶¶ 25, 34). The Open Minds defendants did not disclose that Conn was a paid consultant and instead listed him as an "uncompensated 'advisory board member'" on the company website. (Doc. 42 ¶ 26). MHS avers that the investigations also revealed that the Open Minds defendants submitted false invoices to MHS for work that was never performed or requested and for travel and meals unrelated to MHS work. (Id. ¶¶ 30-31, 33, 43, 51).

Open Minds commenced this action in the Court of Common Pleas of Adams County, Pennsylvania, asserting claims for breach of contract and unjust enrichment. MHS timely removed the matter to this court. Following Rule 12 motion practice, MHS asserts four counterclaims against the Open Minds defendants. The Open Minds defendants move to dismiss three of MHS's counterclaims for failure to state a claim upon which relief may be granted and to strike paragraph 3 of MHS's counterclaims in part. The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

4

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to

5

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III. Discussion

MHS asserts counterclaims against the Open Minds defendants for common law fraud, breach of contract, and money had and received. The Open Minds defendants contend that the gist of the action doctrine bars the fraud claim, and that the voluntary payment doctrine bars the breach of contract and money had and received claims. The Open Minds defendants further contend that paragraph 3 of MHS's counterclaims should be stricken in part. We address these arguments *seriatim*.

### A. Fraud Claim

The Open Minds defendants argue that MHS's fraud claim is barred by the gist of the action doctrine. (Doc. 45 at 13-18). Under Pennsylvania law, the gist of the action doctrine bars tort claims when "the true gravamen, or, gist, of the claim sounds in contract." Dommel Props., LLC v. Jonestown Bank & Trust Co., 162 F. Supp. 3d 438, 443 (M.D. Pa. 2016) (quoting Dommel Props., LLC v. Jonestown Bank & Trust Co., 626 F. App'x 361, 364 (3d Cir. 2015)). A breach of contract may give rise to a tort claim, but the tort claim must be the "gist of the action," and the contract collateral, for a tort claim to be viable. Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 548 (3d Cir. 2010), overruled in part on other grounds by Ortiz v. Jordan, 562 U.S. 180 (2011). A tort claim grounded in obligations that arise from a social policy outside of the contract may coexist with a breach of contract claim. Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d

6

79, 105 (3d Cir. 2001). The nature of the allegedly breached duty is the decisive factor: if the duty would not exist without the contract, then the claim sounds in contract alone. Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014).

MHS premises its fraud claim on four alleged misrepresentation: *first*, that the Open Minds defendants failed to disclose their business relationship with the vendor hired by MHS to provide EHR services; *second*, that the Open Minds defendants submitted false invoices; *third*, that the Open Minds defendants claimed that Conn was an unpaid advisor to Open Minds rather than a salaried consultant; and *fourth*, that the Open Minds defendants prepared and presented false financial statements regarding CARES to the MHS board.

MHS's first allegation of fraud is readily subsumed by the gist of the action doctrine. The 2010 Agreement expressly states that Open Minds may "provide *objective* assistance during the vendor selection process . . . to find a best fit [EHR] solution that meets [MHS's] identified business requirements." (Doc. 42-1 at 5) (emphasis added). MHS's contention that the Open Minds defendants are liable for fraud based on failure to disclose their business relationship with the EHR vendor hired by MHS falls squarely within the ambit of the gist of the action doctrine. The duty allegedly breached flows from the terms of the 2010 Agreement. See Bruno, 106 A.3d at 68. Accordingly, MHS cannot base its fraud claim on the Open Minds defendants' purported failure to disclose their relationship with the recommended EHR vendor.

Conversely, MHS's remaining allegations of misrepresentation implicate duties established by law rather than contract. See *In re* Brown, 557 B.R. 363,

7

375-76 (E.D. Pa. 2016). The Open Minds defendants' alleged submission of false invoices and false financial statements as well as their purported misrepresentation of Conn's relationship to Open Minds are collateral to any of the contracts between Open Minds and MHS. See Synthes, Inc. v. Emerge Med., Inc., 25 F. Supp. 3d 617, 726 (E.D. Pa. June 5, 2014); J.J. DeLuca Co., Inc. v. Toll Naval Assocs., 56 A.3d 402, 414 (Pa. Super. Ct. 2012). Further, MHS's averments implicate "a broader social duty owed to all individuals," namely the duty not to submit false documents or misrepresent facts about employees in the course of business. DeLuca, 56 A.3d at 414; see also Patel v. Patel, No. 14-5845, 2016 WL 3000821, at *6 (E.D. Pa. May 25, 2016); College v. Synergis Educ. Inc., No. 14-6966, 2015 WL 5783682, at *4-5 (E.D. Pa. Oct. 5, 2015). MHS's fraud claim, to the extent it is premised on the trio of alleged misrepresentations set forth *supra*, is not barred by the gist of the action doctrine. Hence, we will deny the Open Minds defendants' motion to dismiss MHS's fraud claim.

### B. Breach of Contract and Money Had and Received Claims

The Open Minds defendants argue that MHS is precluded from asserting its breach of contract and money had and received claims pursuant to the voluntary payment doctrine. (Doc. 45 at 19-21). The voluntary payment doctrine bars recoupment of payment due to mistake of law when the payment was voluntarily made "with full knowledge, or means of knowledge of all the facts, without any fraud having been practiced." Liss & Marion, P.C. v. Recordex Acquisition Corp., 983 A.2d 652, 661 (Pa. 2009). MHS does not allege any facts to suggest that it paid Open Minds under a mistake of law. Cf. Acme Mkts., Inc. v. Valley View Shopping

8

Ctr., Inc., 493 A.2d 736, 737-38 (Pa. Super. Ct. 1995). *Per contra*, MHS claims that it paid Open Minds only because it was unaware that Open Minds had engaged in allegedly fraudulent practices. (See Doc. 47 ¶¶ 43-45, 50-51). In light of these allegations, and drawing all inferences in the light most favorable to MHS, we find that MHS's breach of contract and money had and received claims are not barred by the voluntary payment doctrine. See Liss & Marion, 983 A.2d at 661-62. Accordingly, we will deny the Open Minds defendants' motion to dismiss MHS's breach of contract and money had and received claims.

### C. Motion to Strike

The Open Minds defendants assert that paragraph 3 of MHS's counterclaims should be stricken in part under Federal Rule of Civil Procedure 12(f). Rule 12(f) provides that the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). District courts have "considerable discretion" in resolving a Rule 12(f) motion. Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (quoting N. Penn. Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)). In general, such a motion will be denied unless the allegations are severely prejudicial to one of the parties and unrelated to the plaintiff's claims. Id.; see also 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed. 2016). A party is prejudiced when the challenged pleading "confuses the issues" or places an undue burden on the responding party. Karpov v. Karpov, 307 F.R.D. 345, 348 (D. Del. 2015).

The Open Minds defendants contend that the last two sentences of paragraph 3 should be stricken as "immaterial, impertinent and highly scandalous." (Doc. 45 at 21). We agree. The averment that Oss was "previously implicated in an alleged criminal scheme involving payment of kickbacks to obtain health service contracts" is irrelevant to the claims *sub judice*. Cf. Airgood v. Twp. of Pine, No. 14-1249, 2016 WL 1247237, at *12 (W.D. Pa. Mar. 30, 2016). We will grant the Open Minds defendants' motion to strike.

## IV. Conclusion

The court will deny the Open Minds defendants' motion (Doc. 44) to the extent it seeks to dismiss MHS's claims for fraud, breach of contract, and money had and received. The court will grant the motion only to the extent that the Open Minds defendants seek to strike paragraph 3 of MHS's counterclaims in part. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:   May 17, 2018